**EXHIBIT 1**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE VELEZ, RONNIER MARONA and
PEDRO RODRIGUEZ,

               Plaintiffs,

v.                               Case No. 8:15-cv-02713-EAK-AEP

AVESTA HOMES, LLC,

               Defendant.

_____/

## SETTLEMENT AGREEMENT WITH JOSE VELEZ

    This **SETTLEMENT AGREEMENT** (the "Agreement") is entered into by and between JOSE VELEZ, on behalf of himself, his heirs, executors, administrators and assigns (collectively, "Velez"); and AVESTA HOMES, LLC, on behalf of its present, past, and future affiliates, predecessors, successors, assigns, and each and every one of their respective servants, partners, employees, agents, controlling persons, representatives, joint venturers, beneficiaries, trustees, and alter egos (collectively, the "Defendant").

    **WHEREAS,** Velez was employed by Defendant and asserts claims out of and relating to his employment;

    **WHEREAS,** Velez, along with Ronnier Marona and Pedro Rodriguez (collectively, the "Plaintiffs") filed the above-styled lawsuit against Defendant (the "Litigation");

    **WHEREAS,** Velez and Defendant (collectively, the "Parties") desire to fully and completely resolve and settle any and all claims known and unknown, which Velez had, has or may have against Defendant, including but not limited to the claims in the Litigation; and



WHEREAS, there exists a bona fide dispute between the Parties regarding the number of hours actually worked by Velez; whether Velez was compensated for all hours worked; and if overtime and/or liquidated damages are owed.

NOW THEREFORE, in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The above recitals are true and correct and are incorporated herein by reference.

2. The terms of this Agreement are contingent upon its approval by the Court and the entrance of an Order of Dismissal Of All Claims With Prejudice in the Litigation. Velez and his counsel agree to cooperate with counsel for Defendant and take all actions necessary to obtain approval of this Agreement and dismissal by all Plaintiffs of the Litigation with prejudice for no additional consideration, including but not limited to jointly filing the Joint Stipulation and Motion for Approval of FLSA Settlement Agreement and Dismissal With Prejudice and Memorandum of Law attached as **Exhibit A.**

3. Upon the Court's approval of this Agreement and the entrance of an Order dismissing the Litigation, with prejudice, Defendant shall deliver to Velez' counsel the below checks in full settlement of all claims:

    (a) a check made payable to Velez in the amount of $700.00, minus applicable taxes and withholdings in settlement of Velez' alleged unpaid overtime;

    (b) a check made payable to Velez in the amount of $700.00 in settlement of Velez' claim for liquidated damages;

    (c) a check made payable to the Trust Account of Wenzel Fenton Cabassa, P.A. in the amount of $5,000 in settlement of all Plaintiffs' collective attorneys' fees and costs; and

    (d) a check made payable to Velez in the amount of $100.00 in consideration for the general release, confidentiality, non-disparagement and other duties owed by Velez pursuant to this Agreement.



4.      The Parties agree that the amounts paid to Velez pursuant to Paragraph 3(a), will be treated as wages, with applicable taxes and withholdings deducted and a W-2 issued to Velez. The Parties agree and understand that the amounts paid to Velez and Wenzel Fenton Cabassa, P.A. pursuant to Paragraphs 3(b), 3(c) and 3(d) will be subject to 1099 reporting. Velez agrees that he is responsible for the payment of any and all taxes that may be owed by him in connection with his claims against Defendant and for payment of any and all federal, state and local taxes which may be due by virtue of this Agreement. Velez agrees to hold harmless and indemnify Defendant should there be any resulting liability for failure to pay any and all taxes which may be owed by Velez or Defendant.

5.      Velez represents and warrants to Defendant that he has not filed any lawsuit(s), complaint(s) or initiated any other legal action(s) against Defendant and that he has no pending charge(s), lawsuit(s) or any other legal action(s) against Defendant except the Litigation.

6.      Velez agrees that he has now been paid and/or has received all leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits are due to him, except as provided for in this Agreement.

7.      Velez hereby waives and releases all claims he may have against Defendant under the FLSA or the laws of the State of Florida for unpaid wages, minimum wage, overtime and liquidated damages.

8.      (a)      Velez, individually, and on behalf of, as applicable, Velez' current, former, and successor agents, representatives, guardians, heirs, assigns, successors, executors and administrators does hereby irrevocably release, acquit, and discharge Defendant and the Other Released Parties (as defined in 8(b) below), from any and all Claims and Controversies (as

SLK_TAM-#2485064-v1

defined in 8(c) below); *provided, however,* that nothing in this Agreement will be considered a release of Velez' claims, if any, for Velez' right to enforce this Agreement.

(b)     For the purposes of this Agreement, the term "Other Released Parties" means, as applicable, Defendant's related and affiliated entities and insurers (including corporations, limited liability companies, firms, associations, partnerships, and joint ventures) and with respect to Defendant and its related and affiliated entities and insurers, each of their respective predecessors and successors, and each of their past, present and future employees, officers, directors, stockholders, trustees, owners, partners, members, representatives, administrators, assigns, attorneys, agents, servants, assigns, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs).

(c)     For the purposes of this Agreement, the term "Claims and Controversies" means any and all claims, debts, damages, demands, liabilities, benefits, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, back pay, front pay, severance pay, percentage recovery, injunctive relief, lost profits, emotional distress, mental anguish, personal injuries, liquidated damages, punitive damages, disability benefits, interest, expert fees and expenses, reinstatement, other compensation, suits, appeals, actions, and causes of action, of whatever kind or character, including without limitation, any dispute, claim, charge, or cause of action arising under the Civil Rights Act of 1964, Title VII (including the Civil Rights Act of 1991); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the Employee Retirement Income Security Act; the Consolidated Budget and Reconciliation Act of 1985; the Fair Labor Standards Act; the Family and Medical Leave Act; the Labor Management

Relations Act; the Employee Polygraph Protection Act; the Racketeer Influenced and Corrupt Organizations Act; the Occupational Safety and Health Act; the Electronic Communications Privacy Act; the Uniform Services Employment and Re-Employment Rights Act; the Sarbanes-Oxley Act; the Fair Credit Reporting Act; the Florida Civil Rights Act; the Genetic Information Non-Discrimination Act; Florida's Minimum Wage Act; the Florida Whistleblower's Act; all other applicable state and federal fair employment laws, state and federal equal employment opportunity laws, and state and federal labor statutes and regulations, and all other constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law (including without limitation, breach of employment agreement, other breach of express or implied contract, wrongful discharge in violation of public policy, workers' compensation retaliation, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, retaliation, tortuous interference with prospective contract, tortuous interference with business relationship, tortuous interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional), or otherwise, whether known or unknown to the Parties, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to any and all disputes now existing between Velez on the one hand, and Defendant or the Other Released Parties on the other hand, whether related to or in any way growing out of, resulting from or to result from Velez' employment with and/or termination from Defendant, for or because of any matter or thing done, omitted, or allowed to be done by Defendant or the Other Released Parties, as applicable, for any incidents, including those past and present, which existed or may have

JV

existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents.

(d)     Velez understands that he is releasing Claims of which Velez may not be aware. This is Velez' knowing and voluntary intent, even though Velez recognizes that someday Velez might learn that some or all of the facts that Velez currently believes to be true are untrue and even though Velez might then regret having signed this Agreement. Nevertheless, Velez is assuming that risk and Velez agrees that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that Velez is waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in his favor at the time of signing the release which, if known by him, would have materially affected his settlement with the party being released and Velez understands the significance of doing so.

9.     The Parties agree to refrain from making disparaging comments, either verbally or in writing, about the other.

10.     Velez hereby waives any and all rights he has, had or may have against Defendant for reinstatement to his former or equivalent job, or to any other position with Defendant for any reason. Velez agrees not to apply for employment with Defendant.

11.     Except as provided for in this Agreement, Velez agrees to waive the right to seek payment of attorneys' fees or costs relating to the Litigation.

12.     Velez represents and warrants that he is authorized to enter into and has the authority to perform the terms of this Agreement and that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the Released Claims

SLK_TAM-#2485064-v1

JVU JV

13.     This Agreement is the result of a compromise of disputed claims, and it is understood that the execution and performance of this Agreement by Defendant does not constitute, nor shall it be construed as an admission that Defendant violated any law, statute, rule, regulation or ordinance of either the United States or the State of Florida or breached any duty owed to Velez or any other employee under federal, state or local law, policy or practice, with respect to their employment, or in any other matter, or that any of Velez' claims have any merit whatsoever. Defendant explicitly denies any such wrongdoing.

14.     If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law. In any litigation arising out of or relating to this Agreement or Velez' employment with Defendant, the parties agree all issues of law or fact shall be determined by the Court and any and all right to a jury trial is expressly waived. In any litigation, proceeding or claim to enforce the terms, representations or warranties in this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs from the other party.

15.     This Agreement shall be construed and governed in accordance with laws of the State of Florida.

16.     The Parties hereto agree that this Agreement constitutes the entire agreement between them relating to any matters covered by this Agreement or any other matter whatsoever. This Agreement supersedes and replaces all prior agreements and understandings.

SLK_TAM-#2485064-v1

 JV

17.     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

18.     This Agreement is binding on Velez and his respective heirs, successors and assigns.

19.     Except as expressly provided herein, the Parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the Parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

20.     The Parties acknowledge that each party has had an opportunity to participate in the drafting of this Agreement. No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

21.     The Parties acknowledge and assume the risk that facts, additional and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

22.     Each party to this Agreement acknowledges and represents that he or it (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of his or its own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

_Jevu_JV

**IN WITNESS WHEREOF,** the Parties have executed this Agreement.

Dated: _4/28/16_                              _____
                                              JOSE VELEZ

I, Jose Velez, do hereby declare that the attached Agreement was translated from English to
Spanish by _Cinthia Gonzalez_ and further that I understand what has been translated
and read to me.

                                              _____
                                              JOSE VELEZ

Dated: _4/29/16_                              AVESTA HOMES, LLC

                                              By: _____
                                              Its: _Director of Compliance_

JEV#JV

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE VELEZ, RONNIER MARONA and
PEDRO RODRIGUEZ,

                    Plaintiffs,

v.                             Case No. 8:15-cv-02713-EAK-AEP

AVESTA HOMES, LLC,

                    Defendant.

_____/

## SETTLEMENT AGREEMENT WITH PEDRO RODRIGUEZ

This **SETTLEMENT AGREEMENT** (the "Agreement") is entered into by and between PEDRO RODRIGUEZ, on behalf of himself, his heirs, executors, administrators and assigns (collectively, "Rodriguez"); and AVESTA HOMES, LLC, on behalf of its present, past, and future affiliates, predecessors, successors, assigns, and each and every one of their respective servants, partners, employees, agents, controlling persons, representatives, joint venturers, beneficiaries, trustees, and alter egos (collectively, the "Defendant").

    **WHEREAS,** Rodriguez was employed by Defendant and asserts claims out of and relating to his employment;

    **WHEREAS,** Rodriguez, along with Ronnier Marona and Jose Velez (collectively, the "Plaintiffs") filed the above-styled lawsuit against Defendant (the "Litigation");

    **WHEREAS,** Rodriguez and Defendant (collectively, the "Parties") desire to fully and completely resolve and settle any and all claims known and unknown, which Rodriguez had, has or may have against Defendant, including but not limited to the claims in the Litigation; and

SLK_TAM-#2485098-v1                                     _____PR

WHEREAS, there exists a bona fide dispute between the Parties regarding the number of hours actually worked by Rodriguez; whether Rodriguez was compensated for all hours worked; and if overtime and/or liquidated damages are owed.

NOW THEREFORE, in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. The above recitals are true and correct and are incorporated herein by reference.

2. The terms of this Agreement are contingent upon its approval by the Court and the entrance of an Order of Dismissal Of All Claims With Prejudice in the Litigation. Rodriguez and his counsel agree to cooperate with counsel for Defendant and take all actions necessary to obtain approval of this Agreement and dismissal by all Plaintiffs of the Litigation with prejudice for no additional consideration, including but not limited to jointly filing the Joint Stipulation and Motion for Approval of FLSA Settlement Agreement and Dismissal With Prejudice and Memorandum of Law attached as **Exhibit A.**

3. Upon the Court's approval of this Agreement and the entrance of an Order dismissing the Litigation, with prejudice, Defendant shall deliver to Rodriguez' counsel the below checks in full settlement of all claims:

   (a) a check made payable to Rodriguez in the amount of $1,300.00, minus applicable taxes and withholdings in settlement of Rodriguez' alleged unpaid overtime;

   (b) a check made payable to Rodriguez in the amount of $1,300.00 in settlement of Rodriguez' claim for liquidated damages;

   (c) a check made payable to the Trust Account of Wenzel Fenton Cabassa, P.A. in the amount of $5,000 in settlement of all Plaintiffs' collective attorneys' fees and costs; and

   (d) a check made payable to Rodriguez in the amount of $100.00 in consideration for the general release, confidentiality, non-disparagement and other duties owed by Rodriguez pursuant to this Agreement.

SLK_TAM-#2485098-v1                                        _____ PR

4.     The Parties agree that the amounts paid to Rodriguez pursuant to Paragraph 3(a), will be treated as wages, with applicable taxes and withholdings deducted and a W-2 issued to Rodriguez. The Parties agree and understand that the amounts paid to Rodriguez and Wenzel Fenton Cabassa, P.A. pursuant to Paragraphs 3(b), 3(c) and 3(d) will be subject to 1099 reporting. Rodriguez agrees that he is responsible for the payment of any and all taxes that may be owed by him in connection with his claims against Defendant and for payment of any and all federal, state and local taxes which may be due by virtue of this Agreement. Rodriguez agrees to hold harmless and indemnify Defendant should there be any resulting liability for failure to pay any and all taxes which may be owed by Rodriguez or Defendant.

5.     Rodriguez represents and warrants to Defendant that he has not filed any lawsuit(s), complaint(s) or initiated any other legal action(s) against Defendant and that he has no pending charge(s), lawsuit(s) or any other legal action(s) against Defendant except the Litigation.

6.     Rodriguez agrees that he has now been paid and/or has received all leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits are due to him, except as provided for in this Agreement.

7.     Rodriguez hereby waives and releases all claims he may have against Defendant under the FLSA or the laws of the State of Florida for unpaid wages, minimum wage, overtime and liquidated damages.

8.     (a)     Rodriguez, individually, and on behalf of, as applicable, Rodriguez' current, former, and successor agents, representatives, guardians, heirs, assigns, successors, executors and administrators does hereby irrevocably release, acquit, and discharge Defendant

_____PR

and the Other Released Parties (as defined in 8(b) below), from any and all Claims and Controversies (as defined in 8(c) below); *provided, however,* that nothing in this Agreement will be considered a release of Rodriguez' claims, if any, for Rodriguez' right to enforce this Agreement.

  (b) For the purposes of this Agreement, the term "Other Released Parties" means, as applicable, Defendant's related and affiliated entities and insurers (including corporations, limited liability companies, firms, associations, partnerships, and joint ventures) and with respect to Defendant and its related and affiliated entities and insurers, each of their respective predecessors and successors, and each of their past, present and future employees, officers, directors, stockholders, trustees, owners, partners, members, representatives, administrators, assigns, attorneys, agents, servants, assigns, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs).

  (c) For the purposes of this Agreement, the term "Claims and Controversies" means any and all claims, debts, damages, demands, liabilities, benefits, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, back pay, front pay, severance pay, percentage recovery, injunctive relief, lost profits, emotional distress, mental anguish, personal injuries, liquidated damages, punitive damages, disability benefits, interest, expert fees and expenses, reinstatement, other compensation, suits, appeals, actions, and causes of action, of whatever kind or character, including without limitation, any dispute, claim, charge, or cause of action arising under the Civil Rights Act of 1964, Title VII (including the Civil Rights Act of 1991); the Civil Rights Act of 1866, 42 U.S.C. §§ 1981; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973; the

                _____PR

Employee Retirement Income Security Act; the Consolidated Budget and Reconciliation Act of 1985; the Fair Labor Standards Act; the Family and Medical Leave Act; the Labor Management Relations Act; the Employee Polygraph Protection Act; the Racketeer Influenced and Corrupt Organizations Act; the Occupational Safety and Health Act; the Electronic Communications Privacy Act; the Uniform Services Employment and Re-Employment Rights Act; the Sarbanes-Oxley Act; the Fair Credit Reporting Act; the Florida Civil Rights Act; the Genetic Information Non-Discrimination Act; Florida's Minimum Wage Act; the Florida Whistleblower's Act; all other applicable state and federal fair employment laws, state and federal equal employment opportunity laws, and state and federal labor statutes and regulations, and all other constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law (including without limitation, breach of employment agreement, other breach of express or implied contract, wrongful discharge in violation of public policy, workers' compensation retaliation, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, retaliation, tortuous interference with prospective contract, tortuous interference with business relationship, tortuous interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional), or otherwise, whether known or unknown to the Parties, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to any and all disputes now existing between Rodriguez on the one hand, and Defendant or the Other Released Parties on the other hand, whether related to or in any way growing out of, resulting from or to result from Rodriguez' employment with and/or termination from Defendant, for or

_____PR

because of any matter or thing done, omitted, or allowed to be done by Defendant or the Other Released Parties, as applicable, for any incidents, including those past and present, which existed or may have existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents.

  (d) Rodriguez understands that he is releasing Claims of which Rodriguez may not be aware. This is Rodriguez' knowing and voluntary intent, even though Rodriguez recognizes that someday Rodriguez might learn that some or all of the facts that Rodriguez currently believes to be true are untrue and even though Rodriguez might then regret having signed this Agreement. Nevertheless, Rodriguez is assuming that risk and Rodriguez agrees that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that Rodriguez is waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in his favor at the time of signing the release which, if known by him, would have materially affected his settlement with the party being released and Rodriguez understands the significance of doing so.

  9. The Parties agree to refrain from making disparaging comments, either verbally or in writing, about the other.

  10. Rodriguez hereby waives any and all rights he has, had or may have against Defendant for reinstatement to his former or equivalent job, or to any other position with Defendant for any reason. Rodriguez agrees not to apply for employment with Defendant.

  11. Except as provided for in this Agreement, Rodriguez agrees to waive the right to seek payment of attorneys' fees or costs relating to the Litigation.

                 \_\_\_\_\_ PR

12.     Rodriguez represents and warrants that he is authorized to enter into and has the authority to perform the terms of this Agreement and that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the Released Claims

13.     This Agreement is the result of a compromise of disputed claims, and it is understood that the execution and performance of this Agreement by Defendant does not constitute, nor shall it be construed as an admission that Defendant violated any law, statute, rule, regulation or ordinance of either the United States or the State of Florida or breached any duty owed to Rodriguez or any other employee under federal, state or local law, policy or practice, with respect to their employment, or in any other matter, or that any of Rodriguez' claims have any merit whatsoever. Defendant explicitly denies any such wrongdoing.

14.     If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law. In any litigation arising out of or relating to this Agreement or Rodriguez' employment with Defendant, the parties agree all issues of law or fact shall be determined by the Court and any and all right to a jury trial is expressly waived. In any litigation, proceeding or claim to enforce the terms, representations or warranties in this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs from the other party.

15.     This Agreement shall be construed and governed in accordance with laws of the State of Florida.

_____PR

16.    The Parties hereto agree that this Agreement constitutes the entire agreement between them relating to any matters covered by this Agreement or any other matter whatsoever. This Agreement supersedes and replaces all prior agreements and understandings.

17.    This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

18.    This Agreement is binding on Rodriguez and his respective heirs, successors and assigns.

19.    Except as expressly provided herein, the Parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the Parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

20.    The Parties acknowledge that each party has had an opportunity to participate in the drafting of this Agreement.  No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

21.    The Parties acknowledge and assume the risk that facts, additional and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

22.    Each party to this Agreement acknowledges and represents that he or it (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of his or its own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and

_____PR

entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement.

Dated: _4_ / _28_/ _2016_

_Pedro Rodriguel_
PEDRO RODRIGUEZ

I, Pedro Rodriguez, do hereby declare that the attached Agreement was translated from English to Spanish by _Cynthia Gonzalez_ and further that I understand what has been translated and read to me.

_Pedro Rodriguel_
PEDRO RODRIGUEZ

Dated: _4/29/16_

AVESTA HOMES, LLC

By: _R. Oy B.l_, esq.
Its: _Director of Compliance_

_____PR

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE VELEZ, RONNIER MARONA and
PEDRO RODRIGUEZ,

               Plaintiffs,

v.                                  Case No. 8:15-cv-02713-EAK-AEP

AVESTA HOMES, LLC,

               Defendant.

_____/

## SETTLEMENT AGREEMENT WITH RONNIER MARONA

This **SETTLEMENT AGREEMENT** (the "Agreement") is entered into by and between RONNIER MARONA, on behalf of himself, his heirs, executors, administrators and assigns (collectively, "Marona"); and AVESTA HOMES, LLC, on behalf of its present, past, and future affiliates, predecessors, successors, assigns, and each and every one of their respective servants, partners, employees, agents, controlling persons, representatives, joint venturers, beneficiaries, trustees, and alter egos (collectively, the "Defendant").

**WHEREAS,** Marona was employed by Defendant and asserts claims out of and relating to his employment;

**WHEREAS,** Marona, along with Pedro Rodriguez and Jose Velez (collectively, the "Plaintiffs") filed the above-styled lawsuit against Defendant (the "Litigation");

**WHEREAS,** Marona and Defendant (collectively, the "Parties") desire to fully and completely resolve and settle any and all claims known and unknown, which Marona had, has or may have against Defendant, including but not limited to the claims in the Litigation; and

Page 1 of 9



**WHEREAS**, there exists a bona fide dispute between the Parties regarding the number of hours actually worked by Marona; whether Marona was compensated for all hours worked; and if overtime and/or liquidated damages are owed.

**NOW THEREFORE,** in consideration of the promises and mutual covenants herein contained, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.      The above recitals are true and correct and are incorporated herein by reference.

2.      The terms of this Agreement are contingent upon its approval by the Court and the entrance of an Order of Dismissal Of All Claims With Prejudice in the Litigation.  Marona and his counsel agree to cooperate with counsel for Defendant and take all actions necessary to obtain approval of this Agreement and dismissal by all Plaintiffs of the Litigation with prejudice for no additional consideration, including but not limited to jointly filing the Joint Stipulation and Motion for Approval of FLSA Settlement Agreement and Dismissal With Prejudice and Memorandum of Law attached as **Exhibit A.**

3.      Upon the Court's approval of this Agreement and the entrance of an Order dismissing the Litigation, with prejudice, Defendant shall deliver to Marona's counsel the below checks in full settlement of all claims:

(a)     a check made payable to Marona in the amount of $1,200.00, minus applicable taxes and withholdings in settlement of Marona's alleged unpaid overtime;

(b)     a check made payable to Marona in the amount of $1,200.00 in settlement of Marona's claim for liquidated damages;

(c)     a check made payable to the Trust Account of the Wenzel Fenton Cabassa, P.A. in the amount of $5,000 in settlement of all Plaintiffs' collective attorneys' fees and costs; and

(d)     a check made payable to Marona  in the amount of $100.00 in consideration for the general release, confidentiality, non-disparagement and other duties owed by Marona pursuant to this Agreement.



4.      The Parties agree that the amounts paid to Marona pursuant to Paragraph 3(a), will be treated as wages, with applicable taxes and withholdings deducted and a W-2 issued to Marona. The Parties agree and understand that the amounts paid to Marona and Wenzel Fenton Cabassa, P.A. pursuant to Paragraphs 3(b), 3(c) and 3(d) will be subject to 1099 reporting. Marona agrees that he is responsible for the payment of any and all taxes that may be owed by him in connection with his claims against Defendant and for payment of any and all federal, state and local taxes which may be due by virtue of this Agreement. Marona agrees to hold harmless and indemnify Defendant should there be any resulting liability for failure to pay any and all taxes which may be owed by Marona or Defendant.

5.      Marona represents and warrants to Defendant that except for the Charge of Discrimination (EEOC Case No. 511-2015-02116C) filed with the EEOC on July 2, 2015 ("Marona's Charge of Discrimination"), and except for his claim for Worker's Compensation, Case No.: 16-003069EDS, he has not filed any lawsuit(s), complaint(s) or initiated any other legal action(s) against Defendant and that he has no pending charge(s), lawsuit(s) or any other legal action(s) against Defendant except the Litigation.

6.      Marona agrees that he has now been paid and/or has received all leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, overtime, bonuses, commissions and/or benefits are due to him, except as provided for in this Agreement.

7.      Marona hereby waives and releases all claims he may have against Defendant under the FLSA or the laws of the State of Florida for unpaid wages, minimum wage, overtime and liquidated damages.

SLK_TAM-#2485099-v1

RM

8.    (a)    Marona, individually, and on behalf of, as applicable, Marona's current, former, and successor agents, representatives, guardians, heirs, assigns, successors, executors and administrators does hereby irrevocably release, acquit, and discharge Defendant and the Other Released Parties (as defined in 8(b) below), from any and all Claims and Controversies (as defined in 8(c) below); *provided, however,* that nothing in this Agreement will be considered a release of: (a) Marona's claims, if any, for Marona's right to enforce this Agreement; (b) claims arising out of Marona's Charge of Discrimination (EEOC Case No. 511-2015-02116C) filed with the Equal Employment Opportunity Commission on or about July 2, 2015, including under claims under Title VII of the Civil Rights Act of 1964, or the Florida Civil Rights Act; or (c) Marona's claim for Worker's Compensation, Case No.: 16-003069EDS (collectively, "the Non-Released Claims").

(b)    For the purposes of this Agreement, the term "Other Released Parties" means, as applicable, Defendant's related and affiliated entities and insurers (including corporations, limited liability companies, firms, associations, partnerships, and joint ventures) and with respect to Defendant and its related and affiliated entities and insurers, each of their respective predecessors and successors, and each of their past, present and future employees, officers, directors, stockholders, trustees, owners, partners, members, representatives, administrators, assigns, attorneys, agents, servants, assigns, insurers, employee benefit programs (and the trustees, administrators, fiduciaries, and insurers of such programs).

(c)    For the purposes of this Agreement, the term "Claims and Controversies" means any and all claims, debts, damages, demands, liabilities, benefits, suits in equity, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, back pay, front pay, severance pay, percentage recovery,

SLK_TAM-#2485099-v1



injunctive relief, lost profits, emotional distress, mental anguish, personal injuries, liquidated damages, punitive damages, disability benefits, interest, expert fees and expenses, reinstatement, other compensation, suits, appeals, actions, and cause of action, of whatever kind or character, except the Non-Released Claims, including without limitation, any dispute, claim, charge, or cause of action arising under the Civil Rights Act of 1964 (but not claims arising out of Marona's Charge of Discrimination), Title VII (including the Civil Rights Act of 1991) (but not claims arising out of Marona's Charge of Discrimination); the Civil Rights Act of 1866 (but not claims arising out of Marona'sCharge of Discrimination), 42 U.S.C. §§ 1981; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967 (but not claims arising out of Marona's Charge of Discrimination); the Americans with Disabilities Act of 1990 (but not claims arising out of Marona's Charge of Discrimination); the Rehabilitation Act of 1973; the Employee Retirement Income Security Act; the Consolidated Budget and Reconciliation Act of 1985; the Fair Labor Standards Act; the Family and Medical Leave Act; the Labor Management Relations Act; the Employee Polygraph Protection Act; the Racketeer Influenced and Corrupt Organizations Act; the Occupational Safety and Health Act; the Electronic Communications Privacy Act; the Uniform Services Employment and Re-Employment Rights Act; the Sarbanes-Oxley Act; the Fair Credit Reporting Act; the Florida Civil Rights Act (but not claims arising out of Marona's Charge of Discrimination); the Genetic Information Non-Discrimination Act; Florida's Minimum Wage Act; the Florida Whistleblower's Act; unless otherwise excluded, all other applicable state and federal fair employment laws, state and federal equal employment opportunity laws, and state and federal labor statutes and regulations, and all other constitutional, federal, state, local, and municipal law claims, whether statutory, regulatory, common law (including without limitation, breach of employment agreement, other breach of express or

_RM

implied contract, wrongful discharge in violation of public policy, workers' compensation retaliation, breach of covenant of good faith and fair dealing, promissory estoppel, quantum meruit, fraud, fraud in the inducement, fraud in the factum, statutory fraud, negligent misrepresentation, defamation, libel, slander, slander per se, retaliation, tortuous interference with prospective contract, tortuous interference with business relationship, tortuous interference with contract, invasion of privacy, intentional infliction of emotional distress, and any other common law theory of recovery, whether legal or equitable, negligent or intentional), or otherwise, whether known or unknown to the Parties, foreseen or unforeseen, fixed or contingent, liquidated or unliquidated, directly or indirectly arising out of or relating to any and all disputes now existing between Marona on the one hand, and Defendant or the Other Released Parties on the other hand, whether related to or in any way growing out of, resulting from or to result from Marona's employment with and/or termination from Defendant, for or because of any matter or thing done, omitted, or allowed to be done by Defendant or the Other Released Parties, as applicable, for any incidents, including those past and present, which existed or may have existed at any time prior to and/or contemporaneously with the execution of this Agreement, including all past, present, and future damages, injuries, costs, expenses, attorney's fees, other fees, effects and results in any way related to or connected with such incidents, except the Non-Released Claims.

(d)    Except as to the Non-Released Claims, Marona understands that he is releasing Claims of which Marona may not be aware. This is Marona's knowing and voluntary intent, even though Marona recognizes that someday Marona might learn that some or all of the facts that Marona currently believes to be true are untrue and even though Marona might then regret having signed this Agreement. Nevertheless, Marona is assuming that risk and Marona

RM

agrees that this Agreement shall remain effective in all respects in any such case. It is further understood and agreed that, except as to the Non-Released Claims, Marona is waiving all rights under any statute or common law principle which otherwise limits application of a general release to claims which the releasing party does not know or suspect to exist in his favor at the time of signing the release which, if known by him, would have materially affected his settlement with the party being released and Marona understands the significance of doing so.

9.    The Parties agree to refrain from making disparaging comments, either verbally or in writing, about the other.

10.    Except as provided for in this Agreement, Marona agrees to waive the right to seek payment of attorneys' fees or costs relating to the Litigation.

11.    Marona represents and warrants that he is authorized to enter into and has the authority to perform the terms of this Agreement and that he has not sold, assigned, transferred, conveyed or otherwise disposed of all or any portion of the Released Claims

12.    This Agreement is the result of a compromise of disputed claims, and it is understood that the execution and performance of this Agreement by Defendant does not constitute, nor shall it be construed as an admission that Defendant violated any law, statute, rule, regulation or ordinance of either the United States or the State of Florida or breached any duty owed to Marona or any other employee under federal, state or local law, policy or practice, with respect to their employment, or in any other matter, or that any of Marona's claims have any merit whatsoever. Defendant explicitly denies any such wrongdoing.

13.    If any provision of this Agreement or the application thereof to any party or circumstances shall be determined to be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provisions to any other party or circumstances shall

not be affected thereby and shall be enforced to the greatest extent permitted by law.  In any litigation arising out of or relating to this Agreement or Marona's employment with Defendant, the parties agree all issues of law or fact shall be determined by the Court and any and all right to a jury trial is expressly waived.  In any litigation, proceeding or claim to enforce the terms, representations or warranties in this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs from the other party.

14.     This Agreement shall be construed and governed in accordance with laws of the State of Florida.

15.     The Parties hereto agree that this Agreement constitutes the entire agreement between them relating to any matters covered by this Agreement or any other matter whatsoever. This Agreement supersedes and replaces all prior agreements and understandings.

16.     This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

17.     This Agreement is binding on Marona and his respective heirs, successors and assigns.

18.     Except as expressly provided herein, the Parties represent and warrant that in executing this Agreement, they do not rely upon and have not relied upon any oral or written representation, promise, warranty or understanding made by any of the Parties or their representatives with regard to the subject matter, basis or effect of this Agreement.

19.     The Parties acknowledge that each party has had an opportunity to participate in the drafting of this Agreement.  No ambiguity shall be construed against any party based upon a claim that the party drafted the ambiguous language.

Page 8 of 9



20.    The Parties acknowledge and assume the risk that facts, additional and different or contrary to the facts which they believe to exist, may now exist or may be discovered after this Agreement has been entered, and the Parties agree that any such additional, different or contrary facts shall in no way limit, waive, affect or alter this Agreement.

21.    Each party to this Agreement acknowledges and represents that he or it (a) has fully and carefully read this Agreement prior to signing it, (b) has been, or has had the opportunity to be, advised by independent legal counsel of his or its own choice as to the legal effect and meaning of each of the terms and conditions of this Agreement, and (c) is signing and entering into this Agreement as a free and voluntary act without duress or undue pressure or influence of any kind or nature whatsoever and has not relied on any promises, representations or warranties regarding the subject matter hereof other than as set forth in this Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement.

Dated: _09/28/16_                          _____
                                              RONNIER MARONA

I, Ronnier Marona, do hereby declare that the attached Agreement was translated from English to Spanish by _Cynthia Gonzalez_ and further that I understand what has been translated and read to me.

                                              _____
                                              RONNIER MARONA

Dated: _4/29/16_                          AVESTA HOMES, LLC

                                          By: _R. Guy Bil_ ESq.
                                          Its: _Director of Compliance_

+TRADUCIDO POR  CYNTHIA GONZALES